*CREDITOR can not split demands without debtor's consent.*

---

St. Louis Rawhide Manufacturing Company, Appellant, v. F. W. Hill, Respondent.

St. Louis Court of Appeals, November 15, 1898.

1. **Instructions.** Instructions in case at bar examined and approved.

2. **Evidence**: VERDICT: SETTLEMENT. In the case at bar there is a good deal of conflict in the evidence, but the jury settled all that by their verdict, and it is not within the province of this court to review that settlement.

*Appeal from the St. Louis City Circuit Court.*—HON.
SELDEN P. SPENCER, Judge.

AFFIRMED.

R. L. & JOHN JOHNSON, J. M. LEWIS and C. M.
NAPTON for appellant.

Under the pleadings the issue to be decided by the
jury was whether defendant bought the stock absolutely
or conditionally.   There was a great deal of evidence
bearing on this question; yet the instruction singles
out the one feature only, and tells the jury if they be-
lieve the $100 was loaned Weare, individually, they
must find for defendant.   With equal force we might
ask why did not the court tell the jury that if they
believed that defendant wrote the letter to plaintiff in
which he admitted he had bought the stock, then they
must find for plaintiff?   Such instructions have
uniformly been condemned.   Hohstadt v. Daggs, 50
Mo. App. 240; Griffith v. Conway, 45 Mo. App. 574;
Maack v. Schneider, 57 Mo. App. 431.   An instruction
which singles out and gives prominence to a particular
fact in evidence, should be refused.   Noyer v. Cun-
ningham, 51 Mo. App. 194; Railroad v. St. Louis
Stock Yds., 120 Mo. 541; State v. Jackson, 105 Mo.
196.   It is error to single out a particular fact and
make the whole case turn upon it.   Steinwender v.
Creath, 44 App. 356; Barr v. Kansas City, 105 Mo.
550.   It is error to submit to the jury an issue of fact
not raised by the pleadings.   Wright v. Fonda, 44 Mo.
App. 634; Woods v. Campbell, 110 Mo. 572; Hough-
land v. Dent, 52 Mo. App. 237.   Instructions must be
restricted within the limits of the issues made by the
pleadings and can not change the issues so made.
State v. Sitlington, 51 Mo. App. 252; Scott v. Allen-

baugh, 50 Mo. App. 130. An instruction which exceeds the limits of the defense pleaded in the answer is fatally vicious. Aultman v. Smith, 52 Mo. App. 351. Instructions must be based upon the theory adopted in the pleadings. Rhoades v. McNulty, 52 Mo. App. 301.

HENRY S. SHAW for respondent.

The instructions given by the court, and taken together, fairly present the law .of the case upon the issues raised by the petition and denial, or plea of *non est factum*. Bank v. Hatch, 98 Mo. 376; McBeath v. Craddock, 28 Mo. App. 380; Muehlhausen v. Railroad, 91 Mo. 332; Fletcher v. Milburn M. Co., 35 Mo. App. 321. Under defendant's denial the question was simply: did the parties make a contract; was there part performance on both sides; could and did plaintiff offer to complete the contract, and defendant refuse to comply with his part of it? Or did defendant merely negotiate with a view of, under certain condition, making a contract at some future time and pending negotiations, loan one G. G. Wear $100. It was essential for the jury to determine whether the $100 was part payment or a loan. Instructions which group together disputed facts, supported by evidence, are preferable to those that deal in generalities. Zimmerman v. Railroad, 71 Mo. 476. If a party is entitled to have the existence of a fact in evidence submitted to the jury by instruction, it is proper to instruct as to such fact through the name of the witness be singled out in the instruction. Hartman v. Railway, 39 Mo. App. 88. The gist of the question was: could plaintiff deliver the stock under its contract, and did it offer to do so. St. Louis Rawhide Co. v. Hill, 72 Mo. App. 142. If there · was any error in phraseology it was

harmless because it left plainly to the determination of the jury the question of tender and ability to tender the stock. Keene v. Schnedler, 92 Mo. 516. It was the duty of plaintiff to ask for proper instructions presenting his view of the case. The record does not show that any instructions other than those given by the court were asked. Drey v. Doyle, 99 Mo. 459. If it was error to single out this payment of $100 in defendant's instruction, it was likewise error to emphasize it in plaintiff's instruction. "*Communis error facit jus.*" Harrington v. Sedalia, 98 Mo. 583; Whitmore v. Sup. Lodge, 100 Mo. 46; Flint-Walling Mfg. Co. v. Ball, 43 Mo. App. 504. The giving of an objectionable instruction will not constitute reversible error, when in view of all the other instructions and the evidence in the case, it is not likely to have misled the jury. Fugate v. Milar, 109 Mo. 281. If the verdict of the jury is the only one that could have been found consistent with the evidence, the judgment will be affirmed, though an objectionable instruction is given. Fitzgerald v. Barker, 96 Mo. 661; Henry v. Railroad, 113 Mo. 525. The instruction did not prejudice the rights of the appellant. Coleman v. Drain, 116 Mo. 387; Sinclair v. Bradley, 52 Mo. 180. The plaintiff can not recover under his own pleadings and evidence, hence the appellate court should not review the action of the trial court. Cathcart v. Railroad, 47 Mo. App. 79. It was competent to show that this corporation was insolvent from its inception and insolvent at the time of the alleged contract. If the evidence showed that it was a fraud as well as a pauper so much the worse. A condition shown to exist is presumed to continue until the contrary is shown. The judgment ought to stand because it was based on competent evidence, and upon a valid defense to plaintiff's cause of action. Gruen v. Bamberger, 25 Mo. App. 69; Martin-Perrin

Co. v. Perkins, 63 Mo. App. 310; Marks v. Turner, 54 Mo. App. 650.

BLAND, P. J.—This cause was here at the October, 1897, term of this court on the appeal of the defendant Hill, when the judgment was reversed and the cause remanded for retrial. (72 Mo. App. 142.) After the cause was remanded the defendant amended his answer, by specifically denying all the allegations of the petition (except that plaintiff is a corporation), and the following affirmative defense, to wit:

"Defendant, further answering plaintiff's said petition, states that on or about the third day of June, 1896, one G. G. Weare, the then President of the said 'The St. Louis Rawhide Company,' for the purpose of inducing defendant to advance money to said company, and with the intent to deceive and defraud defendant, falsely, knowingly and fraudulently, represented to defendant that said company was the owner of a valuable plant, machinery and process for the treatment of untanned leather or rawhide, by means of which goods and articles of commerce, usually made of tanned leather, could be manufactured, equal or superior to leather goods, and at a greatly reduced cost of manufacture, and which would sell to the trade at prices usually obtained for such leather goods of much greater original cost; that such process was thoroughly tested, tried and certain in results, whereby very large profits could be made out of the goods manufactured under plaintiff's process when sold in competition with leather goods. That said company then and on said —— day of June, 1896, had on its books orders for its finished product at prices largely above the cost of manufacture all of which orders would be taken and paid for as soon as delivered, for which greatly remunerative profits could at once be realized.

*ANSWER of defendant.*

"That said company was in prosperous and solvent circumstances, had outstanding collectible accounts and cash assets largely in excess of its liabilities, and only needed a small immediate advance, not to exceed two thousand dollars in any event, with which to purchase hides and material out of which to manufacture goods to fill pressing orders.

"Defendant further states that he had at the date aforesaid no technical or practical knowledge of the manufacture of leather goods, that he was wholly ignorant of plaintiff's alleged process, or the condition or state of plaintiff's business, or its assets, or probable income, or of its ability to manufacture and sell its goods at the prices stated to him by the said Weare, but that believing and relying upon the aforesaid false and fraudulent representations of the said Weare of and concerning the business, conditions and profits of said company and with the intent to further investigate said representations, statements and promises, defendant did at the request of said Weare, advance to plaintiff for use in its business, the sum of one hundred dollars upon the express condition and understanding that if defendant was not satisfied that plaintiff's said business, conditions and prospects were in all respects as represented by the said G. G. Weare, plaintiff would upon demand repay to defendant said one hundred dollars. Defendant further states he did on or about the —— day of June, 1896, agree to and with the said Weare to investigate the aforesaid representations, statements and promises of the said Weare of and concerning the business, condition and prospects and resources of plaintiff, the feasibility and practicability of plaintiff's said process and the probable profits to be derived therefrom and if satisfied to embark therein, advance such sum or sums of money, not to exceed in aggregate two thousand dollars, at such times as would

in his, the said defentant's, judgment be necessary to secure supplies and material to fill outstanding orders and for no other purpose, and to take as a consideration for such advances, such quantity and value of the shares of the capital stock of plaintiff company as would secure to the defendant the absolute control of the direction, management, business and affairs of said company.

"Defendant further states that upon investigation he ascertained that the aforesaid representations, statements and promises of the said Weare, of and concerning the aforesaid business, prospects, resources, and the ability of plaintiff's process and plant to profitably manufacture and put upon the market its manufactured goods were wholly false, deceptive, misleading and untrue.

"Defendant further states that as a fact said plaintiff company was absolutely and utterly insolvent, hopelessly and irretrievably in debt, without any considerable assets, that its orders were few in number and small in amount and for articles only in which there was little if any margin of profit, and in which there could be no profitable competition; that its process although tried by others, was still experimental and unsatisfactory and had involved the predecessor of plaintiff in the same business, with the same appliances and process and with equally as skilled labor in financial ruin, resulting in bankruptcy, and that said enterprise and business was wholly chimerical, visionary and uncertain except as to the fact of wasting a great deal of money.

"Defendant further states that neither plaintiff nor the said Weare, owned, controlled or could deliver to defendant on said third day of June, or at any time thereafter and up to the beginning of this suit a.

majority in amount of the capital stock of plaintiff company.

"Defendant further states that he duly notified the said G. G. Weare on or about the ——— day of June, 1896, and at divers times thereafter that he declined to embark in plaintiff's business, and demanded of plaintiff the return and payment of said one hundred dollars, advanced and loaned to plaintiff as aforesaid, but that plaintiff has neglected and refused and still refuses to repay said sum or any part thereof; wherefore defendant prays that he go hence without day and have and receive of plaintiff the sum of one hundred dollars with interest and cost of suit."

The affirmative defense was put in issue by a reply. On the trial the plaintiff abandoned the second REPLY. count of its petition and relied on the first which charged that the corporation had sold to Hill eighty shares of its capital stock for $2,000; that Hill had paid $100 on his purchase and received twenty-five shares, but had failed and refused to pay for or receive the balance of the shares. A verdict was returned for defendant by the jury who tried the case and judgment was rendered thereon; from this plaintiff duly appealed.

The evidence introduced by the plaintiff tended strongly to prove its case as stated in its petition. The evidence introduced by the defendant tended to prove that the corporation was insolvent from its inception; that the money it expected to receive from Hill would have been used to pay a corporate debt, to secure which corporate stock had been pledged; that it was without funds to prosecute its business, and that the business was unprofitable. There was some evidence also that Weare, the president of the company, represented to Hill that the business was profitable; that the plant was worth $10,000, and that the assets of the concern

were equal to its liabilities; that the company needed funds to buy hides to fill orders that were accumulating, and that the proceeds of Hill's purchase, $2,000 (if made), should all go in as a working capital. There was also evidence tending to prove that Hill did not make any agreement to purchase any stock, but that he agreed with Weare to look into the affairs of the corporation, and if he found them as represented by Weare he would take eighty shares of the stock at $2,000; that he did look into the condition of the corporation, found it insolvent, and that Weare's representations were false, and that when Hill ascertained these facts he refused to purchase the stock; that the $100 he let Weare have was a loan, and not a payment on purchase of stock. The court of its own motion gave the following instruction:

"If from the evidence you believe that the defendant F. W. Hill, on June 3, 1896, agreed to pay $2,000 to the plaintiff, the St. Louis Rawhide Co., in purchase of 80 shares of the capital stock of said company, and paid $100 on account thereof, and received 25 shares of the said stock from the company, and he failed and refused to further pay for said 80 shares of stock, and that the plaintiff has tendered the said stock to the defendant and is ready and able to deliver the same, then your verdict should be for the plaintiff.

INSTRUCTION.

"If your verdict is for the plaintiff you will find for him (it) in the sum of $1,900 with interest thereon at the rate of 6 per cent from Sept. 9, 1896.

"If on the other hand you believe that the defendant did not on June 3, 1896, purchase of the plaintiff company eighty shares of its stock and agree to pay $2,000 therefor, and that the $100 which defendant advanced was advanced to G. G. Weare as a personal loan

to Mr. Weare as an individual, and that the twenty-five shares of stock in the plaintiff company which defendant received, was a security for such individual loans, then your verdict should be for defendant."

No other instructions were asked or given. The giving of this instruction is assigned as error. The issue presented both by the special denial and the affirmative matter set forth in the answer raised but one issue; in substance they are both nothing more than a denial of the making of the contract, a plea of *non est factum*, and the instruction put this sole issue squarely to the jury, and is unobjectionable. Appellant assigns as error also the action of the court in admitting over its objection the assignment of the judgment recovered on the first trial to Spaunhorst. This evidence was admissible in connection with the testimony of Spaunhorst to the effect that the corporation was indebted to him, and that he held stock of the corporation as collateral to secure the debt, this evidence tended to prove the falsity of Weare's representations to Hill (if made), that all of the money which Hill was to pay for stock should go into the corporation as a cash asset and be used as working capital. There is a good deal of conflict in the evidence, but the jury settled all that by their verdict, and it is not within our province to review that settlement. The verdict is supported by some evidence, and the judgment is affirmed. All concur.