INEZ BENTON, APPELLANT, v. WINDYVILLE CONSOLIDATED SCHOOL DISTRICT, NO. 32, OF DALLAS COUNTY, MISSOURI, RESPONDENT.—68 S. W. (2d) 826.

Springfield Court of Appeals. February 20. 1934.

86

*Phil M. Donnelly* for appellant.

*Herman Pufahl, L. H. Presley* and *John S. Haymes* for respondent.

ALLEN, P. J.—Respondent is a Consolidated School District, No. 32, in Dallas County, Missouri; and what is hereinafter designated the Cudd School is a part thereof.

On about May 14, 1931, an agreement in writing was executed by appellant, and the directors of the defendant district, by which appellant was conditionally employed to teach a nine months' term at the Cudd School, in said district, during the school year of 1931-2, at a salary of $60 per month, which term was to commence August 24, 1931, on which date she presented herself at the said school and tendered performance upon her part of said agreement, but the directors of said school, for reasons hereinafter stated, refused to permit her to teach the same. She, thereupon brought this action, claiming the amount of a year's salary.

The respondent, answering, admitted that it was a consolidated school; that the persons named in appellant's petition as such, were directors thereof, at the times mentioned in said petition, and that appellant presented herself to teach as alleged in her petition, but that previous thereto the "said directors had employed another to teach said school."

Further answering, respondent alleged that appellant was elected as a teacher for said Cudd School on condition "that the State approve her credits," but that the condition of her employment and election was not met; that her credits were not approved by the State and that therefore the terms of her contract of employment relating to her educational preparation, were not complied with by appellant.

The issue was tried before the court, without a jury, resulting in a finding for respondent, from which plaintiff appeals.

The evidence relating to the contract of employment, mentioned in appellant's petition and respondent's answer is contained in certain letters exchanged between them, which are in substance as follows:.

"April 18, 1931.

"Members of the Board of Education,
"Cudd District,

"Please consider me an applicant for the position as teacher of your school this coming year. I am a member of this year's graduating class at Lebanon High School, and am finishing the course in Teachers' Training offered in this school. . . . .

"I will have a Teachers' Training Certificate when I graduate this year, and am going to Springfield this summer and get my college credit. I will teach your school for $75.00 per month, with Janitor work included. . . .

"INEZ BENTON."

Thereafter, on May 14, 1931, Mr. Frank T. Dugan, for the School District, wrote to Miss Benton, as follows:

"At a meeting of Board of Education of Windyville Consolidated District No. 32, you were elected teacher for Cudd School at a salary of $60.00 per month, with janitor work included, on *condition that the state will approve your work.*

"School will start August 24th.

"FRANK T. DUGAN,
"Windyville, Mo.

"P. S. The Board understands you will attend college this summer."

To which plaintiff, on May 22nd, replied as follows:
"Mr Frank Dugan,
"Windyville, Mo.

"I received your letter telling me I was employed as teacher of your school this year.

"I am going to Springfield Teachers' College this summer to prepare myself a better teacher. . . .

"INEZ BENTON."

Thereafter, at a meeting of the Board of Education of the Windyville District, among others, the following proceeding was had:

"The Board, by ballot elected teachers on the following conditions —*that the state approve their credits, and they attend summer school.* Inez Benton was elected to teach Cudd School at $60 per month."

Frank T. Dugan, a member of the School Board, on August 12, 1931, wrote to the appellant as follows:
"Miss Inez Benton,

". . . The President of the Board has a recent letter from the State Department advising the Board to meet the requirements of the Department. Therefore the Board took action and employed another teacher with 140 hours, for Cudd.

"Please pardon me for writing this notice as it is an unpleasant task, and no desire on my part, but an order from the Board.

"I am very sorry indeed, that such action had to be taken, so wishing you success in any further undertaking, I remain

"Respectfully yours,

"FRANK T. DUGAN."

Mr. H. G. Day, President of Windyville School District, had previously written the following letter to Mr. Chas. A. Lee, Superintendent of Schools:

"I am writing you in regard to teachers we have employed for the coming year.

"All the teachers we have employed are up to or near the 60 hours, with the exception of one. She is a graduate of Lebanon H. S. and is attending St. Teac. Col. this Summer. She will only have 10 hours, but seems to be the choice of that district.

"We have employed her on conditions that she be approved by the State Department.

"If you do not think she can be approved by the State please advise us at once, so we can make another selection as we want to work in harmony with the State Department. If it be possible let us hold her, as we believe she will make good.

"Yours very truly,

"H. G. DAY, President of B."

In reply to which letter Chas. A. Lee, the State Superintendent, wrote the Board the following letter:

"City of Jefferson,

"July 24, 1931.

"Mr. H. G. Day,

"Windyville, Mo.

"While I do not desire to do an injustice to any teacher, I feel that to permit you to employ the teacher you mention, would be too great a departure from the requirements of the department. It would be fair neither to other teachers nor to the pupils.

"I believe you have had some difficulty heretofore, regarding the improvement of the Windyville School from the fact that you have employed teachers who were not qualified.

"I wish to assure you that I appreciate your letter and the spirit of cooperation which prompted it, and I trust that you will employ teachers who are fully qualified.

"Very truly yours,

"CHAS. A. LEE,

"State Superintendent."

In the deposition of Mr. Chas. A. Lee, State Superintendent of Schools, he testified in substance as follows:

That in the public school system of this State there are three schools denominated approved high schools. They are classified by Sections 9447 and 9448, Revised Statutes 1929, and designated as First, Second and Third Class. The Windyville Consolidated School

District, in Dallas County is a first-class high school. To teach in this school the department recognizes that the qualification of teachers is one of the fundamental necessities of a good school system. Therefore one of the requirements is that all teachers employed in the elementary work in either class, shall have first completed two years, or sixty hours of college work.

That he received a letter from the defendant district, concerning this matter in July, 1931, and on July 24, 1931, replied thereto, as hereinbefore stated, and further testified that according to provisions of said Sections 9447 and 9448, Revised Statutes 1929, the Department had adopted rules and regulations governing the various classes of schools, published and distributed the same for information of the public, and that the department recognizes that the qualification of teachers is one of the fundamental requirements of a good school system. That in furtherance of the improvement thereof, one of the requirements is that all teachers employed in the elementary school work in a first, second or third class district, shall have completed two years of sixty hours of college work. That is "We have taken the position that in case a school district or board of education wishes to run an approved school that it will employ teachers meeting the regular requirements." That he personally had always taken the position that the department had no authority after it has set up the regular rules and regulations regarding qualifications of schools, to go back of any of those rules in any way, and that therefore "It just leaves it up to the board. *In case the board meets the minimum requirements, the school will be approved. In case it doesn't the department takes the position that it (the board) does not care or wish to maintain an approved school.*" If it fails to meet the requirements of the department it would lose its classification. That is, if the Board of Windyville had employed Miss Benton, or any other teacher having only ten hours of college credits, the department would have taken the position that the board did not desire to maintain an approved school, and it would, therefore, have been dropped from the list of accredited schools, and that if the school is not approved it will be denied the special state aid, but will receive the general state aid, consisting of teachers' quota and daily attendance.

Appellant's contention, as expressed in the Points and Authorities, cited in her brief, are first: That the written application and its acceptance by the board in writing, constituted a valid contract of employment, citing in support thereof: Boswell v. Consolidated School Dist. No. 8 of Newton Co., 10 S. W. (2d) 665; Baxter v. School Dist. of Miller, 260 S. W. 760, and Edwards v. School Dist. No. 73, of Christian Co., 297 S. W. 1001, and R. S. 1929, Sec. 9210.

With the holding of the court in each of the cases we certainly agree, but it will be observed in the Edwards Case, supra, pp. 3, l. c. 1002,

that this court pronounced the doctrine in such cases to be that "A contract is the agreement which the parties make and not the writing which evidences the agreement," so upon such a declaration of law cannot escape the clear statement made in the letter of date May 14, 1931, from Frank T. Dugan to Miss Benton, in which, speaking for the board, he said: "At a meeting of the Board of Education of Windyville Consolidated District Number 32, you were elected teacher for Cudd School . . . *on condition that the state will approve your work.*"

Appellant's letter of acceptance of date May 22, 1931, in law, could not have been other than subject to the condition "that the state would approve her work" done in preparation. This was not done, but on the contrary was refused. Therefore, there could not have been such a contract as is contemplated by opinions of the court in the cases hereinbefore cited by appellant.

It is contended by appellant that neither the State Department of Education nor the State Superintendent of Schools under the law, have any authority to set up rules or regulations such as are in evidence in this case, and that the rules in evidence are in conflict with the statutory law, insisting that:

"If this is not true then Section 9408, Revised Statutes 1929, has no meaning whatever, and no graduate of a high school in this state, who has taken the Teachers-Training Course can teach in any of the elementary or rural schools of any of the counties of the state. . . ."

To this contention we cannot subscribe. We hold that the effect of the attitude of the state department, in its commendable efforts by suggestion, to aid in raising the standard of the educational qualifications of teachers for the high schools of the State, is a forward step, highly valuable to educational progress, and should, when practical and reasonably possible, receive the loyal support and assistance of school boards.

Sections 9446, 9447 and 9448, Revised Statutes 1929, relating to duties of the State Superintendent, we think, fully authorizes the State Superintendent to do all that was done by him in this case.

Appellant insists that when the defendant required any previous college work of their teachers who taught in the rural or elementary schools, that such requirements were in conflict with Section 9408, Revised Statutes 1929, and that when the board wrote her that it understood she would attend college during the summer term, it was attempting to put upon her a burden that the law did not require. However, with the next following statement of appellant we do agree, to-wit:

"That the school board of a district is charged with the knowledge of the school law and that the question of employing teachers is wholly a matter within the power and jurisdiction of the school board

and that the State Superintendent of Schools and the State Department of Education cannot interfere with contracts made and entered into by and between a teacher and the school board.''

It is true that there can be no doubt that the school board is charged with the knowledge of the school law, and that they do have and did in this case, have the statutory right to employ any teacher possessing the qualifications provided by law, and that:

The appellant as provided by Section 9408, Revised Statutes 1929, had a certificate of graduation from the Teacher-Training Course of the Lebanon High School and ten hours of college work, and therefore had a. ''valid license'' to teach in any public, elementary or rural school in any county in the State, *if she should be employed,* but as suggested by counsel for appellant, ''The question of employing teachers is wholly a matter. within the power and jurisdiction of the school board. . . .

In reply to appellant's first letter of application, the school board notified her that her election was on condition ''that the State would approve her work.'' Her letter of acceptance therefore, of necessity, contemplated the conditional terms of employment, previously communicated to her, by the directors of respondent.

Article Eleven (11) Chapter 57, Revised Statutes 1929, relating to the election, duties and term of office of the State Superintendent of Public Schools, provide among other things that he shall exercise supervision over the educational funds of the State, cause to be published as many copies of the law relating to schools with instructions for carrying them into execution as often as any change in such laws may be made, if in the opinion of the Superintendent it be of sufficient importance, and to in every way elevate the standard and efficiency of the instruction given in public schools and in connection with the other duties of the state superintendent, Section 9447 of said Article Eleven of Chapter (57), provides distinctly for the classification and accrediting of public schools by the state superintendent, and by the provisions of Section 9448, Revised Statutes 1929, the superintendent may drop any school from its classification, if he finds that such school does not maintain the required standard of excellence.

Article Four (4), Chapter (57) of the 1929 Statutes of Missouri, relating to city, town and consolidated schools, their organization, duties of their officers and boards by Section (9345) of said Article (4) especially provides for the consolidation of three or more common school districts into one, for the purpose of maintaining both primary and high schools and further provides that ''Such organization and the government of such consolidated district shall be under and in compliance with the laws governing town and city school districts, as provided in Article (4)'' of said chapter.

Article Eleven of said Chapter (57) relating to the powers and

duties of the state superintendent, including the classification of high schools and their work to be accredited is clearly within the scope of the facts in this case, and by the provisions of Sections 9447 and 9448, Revised Statutes 1929, the state superintendent clearly had the power, and for the purpose of providing more efficient educational opportunities it was his duty to propose and fix rules and regulations for the advancement thereof, certainly one of the most effective and beneficial of which is the progressive requirement relating to better qualifications of teachers.

The directors of defendant district to the end that the school for which they had been elected as directors, would be enabled to keep step with the advancing trend of educational facilities and opportunities, chose to follow the regulations and directions of the state superintendent who certainly by reason of his official position and duty, must without evidence to the contrary, be presumed to know how best to plan, advise and promote the most advantageous opportunities for the preliminary education of the youth of our State.

In the letter from the respondent, School Board, replying to the appellant's application for a position as teacher, she was informed that her employment was "on condition that the State will approve your work."

The written record of the election of all teachers was on the same condition, "That the state approve their credits." The letter of the state superintendent to the board, concerning the qualifications of plaintiff and the greater educational opportunities which he, by reason of his duty as the state superintendent, sought to maintain, was evidence of a high conception of public service sought, by the superintendent, to be interposed, as provided by law, for the benefit of the youth of the State. To hold otherwise would be a decided backward step.

It is our opinion from the record in this case that the right and duty of the defendant school district, to obtain the service of teachers best qualified, was clearly reserved in plain words, occurring in the original letter from the board of directors of the defendant school district, to appellant, and that she, by her letter of acceptance included the terms thereof, and was bound thereby.

Therefore, in our opinion, the judgment of the learned trial judge should be and the same is affirmed. *Smith* and *Bailey, JJ.,* concur.